### In re HUF'S ESTATE.

(Surrogate's Court, New York County. March 16, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 111*)—ACCOUNTING—EXPENSES OF LITIGATION.

Under Code Civ. Proc. § 2730, providing that an administrator may be allowed such necessary expenses actually defrayed by him as appears just and reasonable, a litigation can be treated as necessary when it has been prosecuted not only in good faith but also in the exercise of a reasonable judgment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 449; Dec. Dig. § 111.*]

2. EXECUTORS AND ADMINISTRATORS (§ 111*) — EXPENSES OF LITIGATION—REASONABLENESS.

Evidence considered, and *held*, that an administrator, after a judgment in his favor had been reversed, should have taken his defeat at the third trial as final, and not have prosecuted a third appeal, in view of the practice of appellate courts not to keep on ordering new trials against re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

peated verdicts, and hence the administrator was not entitled to the costs of litigation after the third trial.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 449; Dec. Dig. § 111.*]

3. APPEAL AND ERROR (§ 266*)—RESERVATION OF GROUNDS OF REVIEW—EXCEPTION TO REFUSAL OF REFEREE TO MAKE FINDINGS.

Where a referee was not duly requested to make findings on a matter, an exception to his refusal to make such findings does not present for review his failure to do so.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 266;* Reference, Cent. Dig. § 133.]

Final accounting of George Hoffman, administrator of Julia Huf. Objections of judgment creditors and certain of the next of kin to the referee's findings and report allowing credit for certain expenses of litigation. Findings and report modified by disallowing a portion of the counsel fees and disbursements and costs claimed.

The following is the opinion of Wadhams, Referee:

The objections to the administrator's account put in issue the allowance of the disbursements and counsel fees in certain litigation carried on by the administrator, and pray that the expense of such litigation, as well as the judgments for costs recovered against the estate, be charged against the administrator personally, and that his accounts be surcharged therewith, and, in addition, that the accountant be further charged with the amount of an uncollected judgment against one George Thoma.

The contestants have withdrawn their objections to the disbursements incurred in the litigations, in so far as they do not dispute that they were expended for the purposes as set forth in the account and are correct in amount, but they object to the expenditures as "unnecessary and improper charges against said estate, in that all of the proceedings therein, and out of which said disbursements and expenses arose, were unnecessary and unwarranted proceedings, either in law or in fact, and were therefore unnecessary and wasteful, as said administrator well knew, and could possibly result in no benefit to this estate." They also object to the counsel fees as "excessive and unlawful." Other objections filed are "that said action was unnecessary and unwarranted; that the said suits against North River Savings Bank and against Union Dime Savings Institution were prolonged unreasonably, unnecessarily, and wastefully; that the funds of said estate were wasted, diminished, and impaired in said litigation; that the interests of the estate were disregarded and prejudiced."

Upon the trial counsel for the objectants stated: "Our objection is this. We object to all items of disbursements and expenses and fees involved in the action of Hoffman vs. The Union Dime Savings Institution, or Hoffman vs. The North River Savings Bank, on the ground that those actions were unnecessary and ought not to have been brought. We also object to the item of $1,000 fee. on the ground that the $1,000 fee was involved in actions that ought not to have been instituted, and that the item itself is an exorbitant charge."

The burden of proving a claim to be allowed for counsel fees and disbursements made by an accountant rest upon him. Matter of Hosford, 27 App. Div. 427, 429, 50 N. Y. Supp. 550. It was therefore incumbent upon the administrator to show the justice of the bill of his attorney for which he claimed to be allowed, to show what his services were, that they were necessary, and of the value paid.

It appears from the evidence that the deceased at the time of her death had money on deposit in the Franklin Savings Bank, the Union Dime Savings Institution, and the North River Savings Bank, and that one George Thoma,

who had a power of attorney from Julia Huf, drew money out of the Union Dime Savings Institution and North River Bank after the decease of Julia Huf. George Thoma also claimed the money in the Franklin Bank as donee. An action was brought by the administrator against George Thoma for moneys drawn out by him from the Union Dime and North River Banks, and judgment recovered for the sum of $3,783.59 damages and costs. After execution against property was returned unsatisfied, body execution was issued against Thoma, and he was in prison until released by order of the court. Actions were also brought against the three banks. The action against the Franklin Savings Bank was to recover moneys on deposit in the name of Julia Huf, but which the Franklin Bank refused to pay until after suit had been commenced and a number of conferences had been had with the bank's attorneys, which at first refused to pay on the ground of the claim of George Thoma that he was donee of the moneys on deposit. The objectants do not object to the bringing of this action by the administrator. The services in this action are a part of the services for which this $1,000 charge is made, and included preparing and serving verified complaint, receiving notice of appearance, extending time to answer, conferences resulting in settlement, obtaining surrogate's certificate, and waiver by State Comptroller, executing consent to discontinue, preparing affidavit as to loss of passbook, and collecting $1,641.88.

The action against the Union Dime Savings Institution was brought upon these facts. A deposit account had been opened with the bank in the name of "Julia Huf, George Thoma, Attorney," and a power of attorney filed with the bank executed by Julia Huf to George Thoma at the time of opening the account. Thoma drew from the bank after the death of Julia Huf. The action was brought upon the theory that, the agency having been revoked by the death of Julia Huf, the bank paid without authority and was liable to the estate. The defense interposed alleged that the power of attorney was coupled with such an interest in the fund on deposit that the power of attorney survived the death of Julia Huf, and it was upon that issue that the case was tried. In the first trial before Mr. Justice Clarke without a jury, the plaintiff recovered judgment. The Appellate Division reversed it upon the ground that evidence of George Thoma had been improperly excluded, as he was not an interested witness, as that term is construed with reference to section 829 of the Code of Civil Procedure, the court strongly intimating that the judgment was a just one, and Mr. Justice Patterson dissenting (95 App. Div. 329, 88 N. Y. Supp. 686). The second trial was before Mr. Justice Giegerich and a jury, and resulted in a verdict for the defendant. The Appellate Division by a unanimous court reversed on the ground that the verdict was against the weight of evidence. After citing the former appeal, where they held error had been committed in rejecting the evidence of Thoma as to personal transactions and communications had by him with the plaintiff's intestate, the court stated that Thoma was a highly interested witness, and his testimony was so contradictory and apparently unreliable that justice required there should be another trial. 109 App. Div. 24, 95 N. Y. Supp. 1045. The third trial was before Mr. Justice Amend and a jury, and resulted in a judgment for the defendant, which was affirmed by the Appellate Division, Mr. Justice McLaughlin dissenting. An appeal was taken to the Court of Appeals, where the judgment was finally affirmed.

This record does not show unnecessary or unwarranted proceedings, nor that they were prolonged unreasonably, unnecessarily, and wastefully. The first trial was successful, and the administrator was not responsible for the first appeal. Although the Appellate Division reversed, the opinion could leave no doubt as to the administrator's duty. It was necessary to bring the second trial and to appeal from the adverse judgment. When the Appellate Division reversed, again ordering a new trial, it was his duty to conduct the third trial, and, upon the dissent of one of the Justices of the Appellate Division, to obtain a final adjudication by the Court of Appeals. There was not any point at which he could have stopped without deserting his cause and leaving a doubt as to what the law of the case really was. The conduct of these proceedings, beginning with the appeal to the Appellate Division from the first judgment, and involving the conduct of two trials, the preparation of briefs and argument up-

on three appeals to the Appellate Division and one appeal to the Court of Appeals, besides preparing numerous orders, notices, and stipulations, and arguing several motions, including successful opposition to a motion before the Appellate Division to dismiss an appeal, and again for argument, are all part of the services included in the $1,000 charged to which objection is made.

In the case against the North River Savings Bank the facts were somewhat different. The account was opened by a check made out to the order of the cashier of the Franklin Bank, indorsed by him to the order of Julia Huf, indorsed by her in blank, and indorsed "George Thoma, Att." The account was opened in the name "George Thoma, Attorney for Julia Huf." The action was brought upon the same theory as the Union Dime Case, that the agency of Thoma was revoked by the death of Julia Huf. The administrator contended that the form of the check with which the account was opened, as well as the form of the draft with which it was closed, gave the bank notice that it was dealing with an agent, and, having assumed to deal with an agent, was responsible to the estate of the principal for moneys drawn after the agency had been terminated by her death. The case was tried before Mr. Justice Greenbaum, who, after the submission of briefs, wrote an opinion reviewing the authorities, and holding for the defendant on the ground that Thoma was himself the principal in his dealings with the bank. The judgment was affirmed by the Appellate Division. The administrator awaited the determination by the Court of Appeals in the Union Dime Case, which settled the law of both cases. In this action the service as performed and included in the $1,000 charge are the preparation for and trial of the case, the preparation of the case and argument of appeal, the preparation of briefs below and on appeal, and after defeat obtaining a stipulation that in case of plaintiff's success in the Union Dime Case and in consideration of his not appealing to the Court of Appeals in this case, the defendant would satisfy the judgments for costs in this action. There are other items of service and several trips to Philadelphia included in the charge, but it is unnecessary to specify them. The evidence shows that the charge was not only reasonable, but was extremely moderate.

But it is contended, further, that it was improper for the administrator to incur this expense. Expenses incident to the prosecution and defense of actions affecting the administration of the estate, including the employment of attorneys and counsel and the obtaining of testimony, are always allowed, provided they are shown, on the accounting, to have been necessarily or properly incurred, and the amount is just and reasonable. Redfield Sur. Pr. § 555, at page 445, citing many cases. In this case the expense was in my opinion necessarily and properly incurred. It was impossible to foresee the result of the litigation, and the facts required action by the administrator to conserve the estate. Moreover, the administrator was successful in the first instance. In Matter of Miller, 4 Redf. Sur. 302, 304, the surrogate says: "The objection to the expenses incurred in the legal proceedings against the creditor must also be overruled. The proceedings were brought in good faith for the benefit of the estate, and the fact that they resulted in the first instance in an order in favor of the administrator proves that they were not altogether groundless. * * * The administrator must therefore be allowed in his account for the proper expenses and disbursements incurred by him in carrying on the proceedings referred to." The legal expenses of appeals taken in good faith and upon reasonable ground should be allowed out of the estate. Matter of Ritch, 76 Hun, 36, 27 N. Y. Supp. 613.

Under the circumstances disclosed by the evidence in this case, it therefore appears that the bringing of the actions to which objection is made, and the prosecution of the appeals, was proper. Although the estate is small and the expense of these litigations has consumed a large part of it, nevertheless, in view of the recoveries which would have been obtained had the actions been successful, the expenditure was in my opinion warranted.

It is, however, urged by the objectants that, inasmuch as an action had already been begun against George Thoma and a judgment obtained from him for the same sums for which a recovery was sought in the actions against the Union Dime Savings Institution and the North River Savings Bank, the ac-

tions against these institutions were not well founded in law, and that therefore the expenditure for the same should not be allowed to the administrator. It appears that this judgment against George Thoma was, however, never paid, and although the fact of such prior judgment against George Thoma was, during the course of the litigation against the Union Dime Savings Institution, brought to their attention, such previous judgment against George Thoma was not pleaded by either the Union Dime or the North River Bank. The previous judgment against George Thoma was apparently not so obvious a defense as to have suggested itself to the learned counsel for the banks, and I am not prepared to hold, as a matter of law, that, upon the suggestion by the contestants on the accounting of a theory of law which might have defeated the actions of the administrator, but which was never set up in the litigations in question, for that reason the accounts of the administrator should be surcharged with the expense of such litigation.

Further objection is filed alleging that the administrator failed, neglected, and refused to enforce the judgment against George Thoma, whereby the judgment lien and the amount thereof was lost. It appears that the administrator not only took out execution against the property of the judgment debtor, but upon its return unsatisfied took out a body execution under which the judgment debtor was imprisoned. He was released by an order of the court, upon presentation of an affidavit verified May 29, 1903, which was put in evidence as "Plaintiff's Exhibit I," and appears in the record of the case on appeal to the Appellate Division, First Department, in the action against the Union Dime Savings Institution, at page 46, and which, among other things, stated: "The deponent is without funds, and that his family, consisting of a wife and three small children, are dependent upon him for support"; and, after reciting the withdrawal of the moneys from the bank, concludes: "That deponent was unfortuate in being robbed of most of said moneys, and suffering severe losses by fire and by unfortuate reverses in business, and does not possess one penny of said moneys."

The attorney for the administrator received a letter which is marked "Plaintiff's Exhibit 2," in the action against the Union Dime Savings Institution, and appears upon the record to the Appellate Division, at page 49, as follows:

"Lodlow Gail May 22nd 1903.

"Dear Mr. Loughtall: Will you please get me ought of here i all ways was on hand when i was called if you have any feeling for a man just look at my Wife and three Children tink if it was your self in this mater if you dont want to do it for me do it for my Wife and Children i sware if i had any money i would give it to you all i had i lost i swore i was only liveing on what i earned every week you can see when i was out of work i did not have money to pay my Gass bill you can see that up in the Gass Co. and thay wanted to turn off the Gass, think of my Children and Wife they only have the Close that they ware if i had money i would dress them better i even cant pay the doctor for when i was sick and out of work i owed him $23. Dolls. i just started to work about 7 weeks ago and thought things would be all right if i could do any thing for you i would but please look in to the mater they might come a day when i can return a favor in your way, as i say if you dont do it for me do it for my Wife and Children get me out of here i know you can do it and you will have more luck in the end i sware i have got noughting if i had you would be wellcome to it please think it over i pray for you i do any thing if you will let me out of here. please come and see me if you can or let me know please look at his if you had a Wife and 3 Children and was taken away from them and she cant make a liveing becorse she is lame i never ran away and when ever you want me i will all come at once hopeing to here from you soon

"Yours Recepfully,                                    George Thoma."

There is no evidence that the administrator knew that Thoma had property, but he had good reason to believe that Thoma was insolvent. It appears, however, that George Thoma was possessed of certain real estate in Westchester county, and that this was first called to the attention of the administrator upon the foreclosure of a purchase-money mortgage on this property. The ad-

ministrator appeared in the action and filed an answer, the property was duly advertised in foreclosure proceedings, and at the sale was bought in for $500. The administrator in that proceeding spread upon the record by a stipulation the fact of the judgment against George Thoma, and that no part of it had been paid, and that the whole amount of it, with interest, was due and owing. As the mortgage was a prior lien to the judgment, and as there were no surplus funds after the satisfaction of the mortgage, there was nothing to apply upon the judgment. There was no obligation resting upon the administrator to purchase the property at the foreclosure, even had he had sufficient funds to do so. Matter of Kick, 11 N. Y. St. Rep. 688, 694.

Although the contestants submitted evidence which tended to show that the property was of greater value than the price which it brought upon fore-closure, as the proceedings were regular and properly conducted, such evidence is not sufficient in itself to charge the administrator with bad faith or with neglect of duty in failing to collect the judgment out of the property.

The objections filed are therefore overruled.

The motion to dismiss the objections interposed by the contestants is allowed, and the account may be settled and filed.

I. Balch Louis, for George Hoffman.

Ritch, Woodford, Bovee & Butcher, for Union Dime Savings Institution.

Jeremiah D. Toomey, for certain next of kin.

THOMAS, S. The administrator is a resident of Philadelphia, and he intrusted all the matters in the administration of this estate to his attorney in this proceeding. The account filed discloses that receipts amounting to $3,164 have been consumed in the expenses of various litigations, except that a balance of $405.88 remains to be distributed to those entitled thereto, subject to the deductions of the commissions of the administrator and the expenses of this accounting. The debts of the estate being judgments for costs recovered against the administrator in some of the litigations, and aggregating $1,387, besides interest, are unpaid. Objections are filed by the judgment creditors and certain of the next of kin.

Credit claimed for expenses of litigation can be allowed when such expenses were "necessary," and then for a reasonable amount (section 2730, Code Civ. Proc.), and a litigation can be treated as necessary when it has been prosecuted not only in good faith, but also in the exercise of a reasonable judgment. Matter of Huntley, 13 Misc. Rep. 375, 35 N. Y. Supp. 113; Matter of Stanton, 41 Misc. Rep. 278, 84 N. Y. Supp. 46; St. John v. McKee, 2 Dem. Sur. 236; Estate of Peyster, 5 N. Y. St. Rep. 334.

I am of the opinion that the third appeal to the Appellate Division of the Supreme Court in the Union Dime Savings Institution Case, and the further appeal from the judgment of affirmance rendered thereon to the Court of Appeals, when it was finally affirmed, should not, under the rule as I have stated, be approved. This action against the Union Dime Savings Institution was defended upon the ground that the entire deposit had been paid to one George Thoma under a power of attorney executed by the decedent in her lifetime, and it was alleged that George Thoma had a personal interest in the deposit of such a character as rendered the payment valid though made after the death of the decedent. Upon the first trial of that action, had before a justice

of the Supreme Court without a jury, the evidence of George Thoma as to the transactions between himself and the decedent were excluded, it being determined that he was not a competent witness under section 829, Code Civ. Proc., and judgment was rendered in favor of the plaintiff. On appeal the Appellate Division decided that George Thoma was a competent witness, and that his evidence should have been received, and the first judgment was therefore reversed and a new trial ordered. Notwithstanding this conclusion, the court commented upon the evidence in the case, and quite clearly expressed an opinion in hostility to the defendant's contentions in a way likely to caution the justice presiding at the second trial about to be had against being misled into showing any favor to the evidence then pronounced to be admissible. 95 App. Div. 329, 88 N. Y. Supp. 686. The second trial was had before a justice of the Supreme Court and a jury. Mr. Thoma testified, and a verdict was rendered in favor of the defendant. The substance of Mr. Thoma's evidence was that the bankbook had been delivered to him by the decedent and the fund then given to him by parol, he to have all that remained after caring for the decedent during her life and paying the expenses of an appropriate funeral for her after her death. The sole question litigated was one of fact, pure and simple. If Mr. Thoma was believed, the defense of the bank was perfect. Both sides were fully heard, and various matters were urged to attack the story of Mr. Thoma as improbable, or to show him unworthy of belief because of interest or otherwise, and evidence in corroboration of his testimony was also given. On appeal from this judgment the Justices of the Appellate Division were plainly of the opinion that the verdict was erroneous, the conclusion being as follows:

"But even if the technical requisites of a gift had been proved, the evidence is so unsatisfactory and Thoma's evidence so contradictory and apparently unreliable that justice requires there should be another trial, and for that reason the motion for a new trial should have been granted." 109 App. Div. 24, 27, 95 N. Y. Supp. 1045.

The judgment was reversed. Following this action of the Appellate Division, and in the light of the opinion then written, the third trial was held before another justice of the Supreme Court and a jury, upon which all the evidence obtainable on both sides of the controversy to this single issue of fact was again threshed out, and another verdict was rendered for the defendant, and a new trial was denied.

At this point the plaintiff should, in my judgment, have rested and accepted his defeat as final. Twice had the Appellate Division expressed its opinion that Thoma's story was incredible and his evidence unworthy of belief, and two different juries had, notwithstanding those opinions, unanimously agreed that Thoma had told the truth. The third trial was conducted with great fairness, and no occasion for criticism was found upon the appeal that was taken worthy of any comment whatever, and, as I have above said, the issue presented was one of fact, and that alone. The jury had a right to believe Thoma, and no court could by its direction require them to make a finding contrary to that evidence. To direct one new trial when it is believed that the

weight of evidence requires a different result is not unusual, but it is not the practice of appellate courts to keep on ordering new trials against repeated verdicts, and counsel for the administrator in the exercise of a reasonable judgment should have known that fact. A reversal of the judgment would not have availed him unless he could have had a third jury to render a unanimous verdict that each and every of the jurors that had previously tried the case had been mistaken. An aggrieved litigant, dealing with his own funds and at his own expense, may sacrifice his own money in support of his own pride of opinion, but the persistent course of litigation adopted here, by an administrator dealing with the funds of others, can be excused only by success, and when the appeal came to the Appellate Division the affirmance of the judgment was not accompanied by any expression of opinion.

The further appeal to the Court of Appeals was equally ill-advised, since that court could hardly be expected under the circumstances to reverse a judgment as to facts which had been so thoroughly litigated in the court below. The question of the competency of Mr. Thoma as a witness under section 829, Code Civ. Proc., might have been debated in that court if the question had been worthy of serious argument, but in a brief of 48 pages presented to that court by the appellant there is only one point upon this subject, and it contains only eight lines of printed comment. This, in my judgment, was fully as much as the question deserved, for Mr. Thoma was not a party to the record, he had no direct interest in the result, and the defendant did not acquire a right to the fund in controversy from, through, or under him. At any rate, the affirmance in the Court of Appeals was also without opinion.

When the administrator took this third appeal he had funds in his hands wherewith to pay all debts of the estate, including the judgments for costs previously obtained against him. The expenses of the subsequent litigation made the estate insolvent, and rendered the judgments for costs uncollectible, except from the sureties on the undertakings on appeal. The administrator and his attorney should have known that just this result would follow unless they could finally prevail; it was the money of the judgment creditor they so recklessly put to hazard, and they should not be permitted upon light grounds to take from the fund for their own indemnity the means for satisfying the just claim of their adversary. In further criticism of the lack of prudence with which this litigation was conducted, it appeared that the administrator in March, 1903, in an action for money had and received commenced by him in the Supreme Court, recovered by default and procured to be entered against Thoma a judgment for the sums of money collected by him from savings banks, upon which judgment an execution against the body of the defendant was issued, under which he was imprisoned and held in confinement until released under a proceeding had in the Supreme Court. The effect of the entry of this judgment was to destroy the remedy of the Union Dime Savings Institution over against Thoma in case of a recovery against it for an unauthorized payment to Thoma, and as a consequence of this first proposition it op-

erated as a complete bar and defense to the action of the administrator against it. So complete and perfect was this defense that the action would have been dismissed on motion if such motion had been made upon either the second or the third trial upon the fact of the entry of the judgment being shown. Fowler v. Bowery Sav. Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479. This decision of the Court of Appeals was rendered in 1889. It ought to have been known to the counsel for the administrator when the judgment was entered against Thoma in 1903, and at all subsequent times. It was negligence in him not to know what the law was on this subject, but, in view of the fact that his eminent and successful adversaries appear also to have overlooked the point, I am unwilling to place my decision solely on this ground, or to refuse credit for the disbursements up to and including the third trial. The finding and report of the learned referee will be modified by disallowing $250 of the counsel fee allowed by him, and $389.84, the disbursements of the two appeals from the judgment rendered on the third trial, and the account will also be surcharged with the judgments for costs recovered against him on said appeals, amounting to $307.14, together with the interest thereon.

The contentions of the objectants relative to the management by the attorney for the administrator of the foreclosure suit and the loss of the judgment owing to the estate cannot prevail. The administrator was not obligated to bid at the foreclosure sale when he was without funds to do so, and I cannot charge him with notice that his account would be disapproved so as to leave any part of the estate in his hands. The referee has not found the facts of this matter, and he was not duly requested to make any findings with relation thereto. The exception to his "refusal" to make such findings is therefore not a suitable foundation upon which to make a decision in reversal of his action. In all other respects the report of the referee is confirmed. The administrator will be awarded commissions, but he will be charged personally with the costs and disbursement of the contest.