Matter of the Judicial Settlement of the Account of GEORGE
HOFFMAN, as Administrator of JULIA HUF, Deceased.

(Surrogate's Court, New York County, March, 1909.)

Executors and administrators — Rights and liabilities between repre-
sentative and estate — Allowances — Counsel fees — Necessary or
proper items — Expenses of litigation — Beyond point for reasonable
termination.

Credit for expenses of litigation can be allowed an administrator
where such expenses are necessary and for a reasonable amount,
and litigation is to be treated as necessary when it has been prose-
cuted not only in good faith but also in the exercise of a reasonable
judgment.

Where an administrator brings an action against a savings bank
to recover moneys deposited by his intestate and the bank defends
upon the ground that the entire deposit has been paid to one acting
under a power of attorney executed by the decedent in her lifetime,
and that the attorney had a personal interest in the deposit of such
a character as rendered the payment valid though made after the
death of the decedent; and upon the trial the evidence of the
attorney as to the transactions between himself and the decedent
were excluded, on the ground that he was incompetent as a witness
under section 829 of the Code of Civil Procedure, and judgment
was rendered in favor of the plaintiff, but on appeal to the Appel-
late Division it was held that the attorney was a competent wit-
ness, and the judgment was reversed and a new trial ordered; and
where upon a second trial the testimony of the witness was ad-
mitted and the jury found a verdict for the defendant but the
judgment was reversed by the Appellate Division on an appeal there-
from because of the improbability of the testimony of the witness
who was uncorroborated; and where on a third trial the jury
again found for the defendant and the court denied a motion for a
new trial, the administrator, in the exercise of a proper discretion,
should then have stopped the litigation; and where, if the adminis-
trator had then stopped, he might have paid the debts of the estate
out of the assets in his hands, further appeals to the Appellate
Division and to the Court of Appeals were not within the exercise
of a reasonable discretion, where they resulted in depleting the
assets which were originally $3,164, so that but $405.88 remained
which was inadequate for the payment of the decedent's debts.

PROCEEDING upon the judicial settlement of the account of
an administrator.

I. Balch Louis, for administrator.

Albert F. Gescheidt and Jeremiah D. Loomey, for heirs at law.

Ritch, Woodford, Bovee & Butcher, attorneys for contestant.

THOMAS, S.   The administrator is a resident of Philadelphia, and he intrusted all the matters in the administration of this estate to his attorney in this proceeding.   The account filed discloses that receipts amounting to $3,164 have been consumed in the expenses of various litigations, except that a balance of $405.88 remains to be distributed to those entitled thereto, subject to the deduction of the commissions of the administrator and the expenses of this accounting. The debts of the estate, being judgments for costs recovered against the administrator in some of the litigations, and aggregating $1,387, besides interest, are unpaid.   Objections are filed by the judgment creditors and certain of the next of kin.

Credit claimed for expenses of litigation can be allowed when such expenses were " necessary," and then for a reasonable amount (Code Civ. Pro., § 2730), and a litigation can be treated as necessary when it has been prosecuted not only in good faith, but also in the exercise of a reasonable judgment.   Matter of Huntley, 13 Misc. Rep. 375; Matter of Stanton, 41 id. 278; St. John v. McKee, 2 Dem. 236; Estate of Peyser, 5 N. Y. St. Repr. 334.   I am of opinion that the third appeal to the Appellate Division of the Supreme Court in the Union Dime Savings Institution case, and the further appeal from the judgment of affirmance rendered thereon to the Court of Appeals, when it was finally affirmed, should not, under the rule as I have stated it, be approved. This action against the Union Dime Savings Institution was defended upon the ground that the entire deposit had been paid to one George Thoma under a power of attorney executed by the decedent in her lifetime, and it was alleged that George Thoma had a personal interest in the deposit of such a character as rendered the payment valid though made

Surrogate's Court, New York County, March, 1909.   [Vol. 62.

after the death of the decedent.   Upon the first trial of that
action, had before a justice of the Supreme Court without a
jury, the evidence of George Thoma as to the transactions
between himself and the decedent was excluded, it being de-
termined that he was not a competent witness under
section 829, Code of Civil Procedure, and judgment
was rendered in favor of the plaintiff.   On appeal
the Appellate Division decided that George Thoma was
a competent witness, and that his evidence should have
been received, and the first judgment was, therefore,
reversed and a new trial ordered.   Notwithstanding this
conclusion the court commented upon the evidence in the
case, and quite clearly expressed an opinion in hostility to the
defendant's contentions in a way likely to caution the justice
presiding at the second trial about to be had against being
misled into showing any favor to the evidence then pro-
nounced to be admissible.   Hoffmann v. Union Dime
Savings Inst., 95 App. Div. 329.   The second trial was
had before a justice of the Supreme Court and a jury;
Mr. Thoma testified, and a verdict was rendered in
favor of the defendant.   The substance of Mr. Thoma's evi-
dence was that the bank-book had been delivered to him by
the decedent and the fund then given to him by parol, he to
have all that remained after caring for the decedent during
her life and paying the expenses of an appropriate funeral
for her after her death.   The sole question litigated was one
of fact, pure and simple; if Mr. Thoma was believed the de-
fense of the bank was perfect.   Both sides were fully heard
and various matters were urged to attack the story of Mr.
Thoma as improbable or to show him unworthy of belief be-
cause of interest or otherwise, and evidence in corroboration
of his testimony was also given.   On appeal from this judg-
ment the justices of the Appellate Division were plainly of
the opinion that the verdict was erroneous, the conclusion
being as follows: " But even if the technical requisites of a
gift had been proved, the evidence is so unsatisfactory and
Thoma's testimony so contradictory and apparently unreliable
that justice requires there should be another trial, and for
that reason the motion for a new trial should have been

granted." 109 App. Div. 24, 27. The judgment was reversed. Following this action of the Appellate Division, and in the light of the opinion then written, the third trial was had before another justice of the Supreme Court and a jury, upon which all the evidence obtainable on both sides of the controversy to this single issue of fact was again threshed out and another verdict was rendered for the defendant and a new trial was denied.

At this point the plaintiff should, in my judgment, have rested and accepted his defeat as final. Twice had the Appellate Division expressed its opinion that Thoma's story was incredible and his evidence unworthy of belief, and two different juries had, notwithstanding those opinions, unanimously agreed that Thoma had told the truth. The third trial was conducted with great fairness, and no occasion for criticism was found upon the appeal that was taken worthy of any comment whatever, and, as I have above said, the issue presented was one of fact, and that alone. The jury had a right to believe Thoma, and no court could by its direction require them to make a finding contrary to that evidence. To direct one new trial when it is believed that the weight of evidence requires a different result is not unusual, but it is not the practice of appellate courts to keep on ordering new trials against repeated verdicts, and counsel for the administrator in the exercise of a reasonable judgment should have known that fact. A reversal of the judgment would not have availed him unless he could have had a fourth jury to render a unanimous verdict that each and every of the jurors that had previously tried the case had been mistaken. An aggrieved litigant, dealing with his own funds and at his own expense, may sacrifice his own money in support of his own pride of opinion, but the persistent course of litigation adopted here, by an administrator dealing with the funds of others, can be excused only by success, and when the appeal came to the Appellate Division the affirmance of the judgment was not accompanied by any expression of opinion.

The further appeal to the Court of Appeals was equally ill advised, since that court could hardly be expected under the circumstances to reverse a judgment as to facts which had

been so thoroughly litigated in the court below. The question of the competency of Mr. Thoma as a witness under section 829, Code of Civil Procedure, might have been debated in that court if the question had been worthy of serious argument, but in a brief of forty-eight pages presented to that court by the appellant there is only one point upon this subject, and it contains only eight lines of printed comment. This, in my judgment, was fully as much as the question deserved, for Mr. Thoma was not a party to the record, he had no direct interest in the result, and the defendant did not acquire a right to the fund in controversy from, through or under him. At any rate, the affirmance in the Court of Appeals was also without opinion.

When the administrator took this third appeal he had funds in his hands wherewith to pay all debts of the estate, including the judgments for costs previously obtained against him. The expenses of the subsequent litigation made the estate insolvent and rendered the judgments for costs uncollectible, except from the sureties on the undertakings on appeal. The administrator and his attorney should have known that just this result would follow unless they could finally prevail; it was the money of the judgment creditor they so recklessly put to hazard, and they should not be permitted upon light grounds to take from the fund for their own indemnity the means for satisfying the just claim of their adversary.

In further criticism of the lack of prudence with which this litigation was conducted, it appeared that the administrator in March, 1903, in an action for money had and received commenced by him in the Supreme Court, recovered by default and procured to be entered against Thoma a judgment for the sums of money collected by him from savings banks, upon which judgment an execution against the body of the defendant was issued, under which he was imprisoned and held in confinement until released under a proceeding had in the Supreme Court. The effect of the entry of this judgment was to destroy the remedy of the Union Dime Savings Institution over against Thoma in case of a recovery against it for an unauthorized payment to Thoma, and as a consequence of this first proposition it operated as a complete bar

and defense to the action of the administrator against it.    So complete and perfect was this defense that the action would have been dismissed on motion if such motion had been made upon either the second or the third trial upon the fact of the entry of the judgment being shown.    Fowler v. Bowery Savings Bank, 113 N. Y. 450.    This decision of the Court of Appeals was rendered in 1889.    It ought to have been known to the counsel for the administrator when the judgment was entered against Thoma in 1903, and at all subsequent times. It was negligence in him not to know what the law was on this subject, but in view of the fact that his eminent and successful adversaries appear also to have overlooked the point, I am unwilling to place my decision solely on this ground or to refuse credit for the disbursements up to and including the third trial.

The finding and report of the learned referee will be modified by disallowing $250 of the counsel fee allowed by him, and $389.84, the disbursements of the two appeals from the judgment rendered on the third trial, and the account will also be surcharged with the judgments for costs recovered against him on said appeals, amounting to $307.14, together with the interest thereon.

The contentions of the objectants relative to the management by the attorney for the administrator of the foreclosure suit and the loss of the judgment owing to the estate cannot prevail.    The administrator was not obligated to bid at the foreclosure sale when he was without funds to do so, and I cannot charge him with notice that his account would be disapproved so as to leave any part of the estate in his hands. The referee has not found the facts of this matter, and he was not duly requested to make any findings with relation thereto. The exception to his " refusal " to make such findings is, therefore, not a suitable foundation upon which to make a decision in reversal of his action.    In all other respects the report of the referee is confirmed.    The administrator will be awarded commissions, but he will be charged personally with the costs and disbursements of the contest.

Decreed accordingly.