---

## In re HOFFMAN.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

1. EXECUTORS AND ADMINISTRATORS (§ 510*)—SETTLEMENT—QUESTIONS REVIEWABLE—QUESTIONS NOT RAISED BEFORE SURROGATE.

    The contention that the surrogate, on objections to the report of the referee in proceedings for final accounting, did not pass on the report within 90 days, and that therefore the report was, under Code Civ. Proc. § 2546, confirmed as of course, may not be raised for the first time on appeal from the surrogate's decree.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2244; Dec. Dig. § 510.*]

2. EXECUTORS AND ADMINISTRATORS (§ 111*)—CREDITS—EXPENSES OF LITIGATION.

    An executor or administrator is entitled to be credited with the reasonable expenses incurred by him in litigation for the benefit of the estate, conducted in good faith and with reasonable care and prudence.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 448–462; Dec. Dig. § 111.*]

---

**3. EXECUTORS AND ADMINISTRATORS (§ 506\*)—CREDITS—EXPENSES OF LITIGA-TION.**

　　Evidence on an accounting *held* not to show that an administrator, who appealed from a judgment against him, after obtaining on the first trial a judgment in his favor, which was reversed for error in the exclusion of evidence, and after obtaining on appeal a reversal of a judgment. against him on the second trial, acted in bad faith, so that he was entitled to credits for expenses incurred in such appeal.

　　[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2177; Dec. Dig. § 506.\*]

Appeal from Surrogate's Court, New York County.

Final accounting of George Hoffman, administrator of Julia Huf, deceased, in which the Union Dime Savings Institution, a creditor, filed objections. From a decree of the Surrogate's Court (62 Misc. Rep. 600, 115 N. Y. Supp. 984), disallowing a portion of the counsel fees and disbursements, and costs, the administrator and another appeal. Reversed, with instructions.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

John Ewen (H. T. E. Beardsley and I. Balch Louis, on the brief), for appellants.

. C. N. Bovee, for respondent.

McLAUGHLIN, J. The appellant George Hoffman, as administrator of the estate of Julia Huf, deceased, filed his accounts as such in the Surrogate's Court, and ·asked that the same be finally and judicially settled. In the accounts he charged himself with the receipt of $3,164.43, and credited himself with having paid out $2,758.55, which left a balance in his hands of $405.88. The respondent Union Dime Savings Institution, a creditor of the estate, and others, filed objections to the accounts and asked that the same be surcharged with various items. The objections related principally to disbursements incurred in unsuccessfully prosecuting an action on behalf of the estate against the Union Dime Savings Institution. The questions raised by the objections were sent to a referee, who, after hearings had, reported that the accounts filed by the administrator were correct, and "that the charges in said account for moneys paid were necessary expenses actually paid by the said administrator, and the same were just and reasonable." The respondent objected to the confirmation of the referee's report, and its objection was sustained to the extent of $974, and a decree of the Surrogate's Court entered surcharging the administrator's accounts with said sum, and also charging him personally with the costs of the accounting. From this decree the administrator and the surety upon his bond appeal.

The validity of the decree surcharging the accounts is attacked principally upon two· grounds: (1) That the report of the referee was not passed upon within 90 days after it was filed in the Surrogate's Court; and (2) that the amount with which the accounts were surcharged consisted of reasonable expenses incurred in good faith.

As to the first contention, it appears from a statement in the record

that the surrogate did not pass upon the report of the referee within 90 days, and by reason of that fact it is claimed that the report, by express provision of section 2546 of the Code of Civil Procedure, was "confirmed as of course," and that only a decree to that effect could be entered. It does not appear that any such contention was made in the Surrogate's Court, or in fact until the case was presented in this court on appeal. If the appellants intended to raise such question, it should have been done in the Surrogate's Court. They could not sit idly by and take the chances that the decision in that court would be in their favor, and then, when adverse to them, raise the question for the first time on appeal. The doctrine of chances has no place in serious litigation. But, even conceding that we could consider the question, notwithstanding the fact that it was not presented in the Surrogate's Court, it would not aid the appellants, because the question sought to be raised has already been decided adversely to their contention by the Court of Appeals. Matter of Clark, 168 N. Y. 427, 61 N. E. 769; Matter of Barefield, 177 N. Y. 387, 69 N. E. 732, 101 Am. St. Rep. 814.

This brings us to a consideration of the main question presented by the appeal, viz., that the amount of disbursements with which the accounts were surcharged was reasonably incurred in good faith for the benefit of the estate. The disbursements referred to were made in an action brought by the administrator against the Union Dime Savings Institution to recover a deposit of $2,454.80 standing to the credit of the intestate at the time of her death. Some time prior thereto she gave to one Thoma, the husband of a favorite neice, a power of attorney to draw money from the bank, and immediately following her death, or within two or three days thereafter, Thoma, by virtue of this power of attorney, drew all of the money, and appropriated all or the greater part of it to his own use. The administrator sought to hold the bank for the money thus paid, on the ground that the power of attorney was revoked by the death. The bank contended that Thoma had such an interest in the fund as justified its making payment to him, notwithstanding her death.

On the first trial the court gave judgment for the plaintiff (41 Misc. Rep. 517, 85 N. Y. Supp. 16); but on appeal the judgment was reversed, and a new trial ordered (one of the justices dissenting), on the ground that the trial court erred in excluding, under section 829 of the Code of Civil Procedure, certain testimony of Thoma (95 App. Div. 329, 88 N. Y. Supp. 686). Upon the second trial the defendant had a verdict, but the judgment entered thereon was reversed by this court, as against the weight of evidence, and a new trial ordered (109 App. Div. 24, 95 N. Y. Supp. 1045). Upon the third trial the verdict was again in favor of the defendant, and the judgment entered thereon was affirmed by this court (117 App. Div. 923, 103 N. Y. Supp. 1129), one of the justices dissenting; and the decision of this court was affirmed by the Court of Appeals (191 N. Y. 529, 84 N. E. 1114). The surrogate was of the opinion that the last two appeals were unauthorized and unjustifiable, and for that reason the accounts of the administrator should be surcharged with the necessary disbursements made

in connection therewith, including $250 counsel fee, and he accordingly surcharged the accounts with such items, and also with the amounts of the judgments for costs recovered against the administrator on the appeals, with interest.

The rule seems to be thoroughly settled that an executor or administrator is entitled to be credited with the reasonable expenses incurred by him in litigation for the benefit of the estate, conducted in good faith and with reasonable care and prudence. Matter of Title Guarantee & Trust Co., 114 App. Div. 778, 100 N. Y. Supp. 243; Matter of Watson, 101 App. Div. 550, 92 N. Y. Supp. 195; s. c., 115 App. Div. 310, 100 N. Y. Supp. 993, affirmed 187 N. Y. 541, 80 N. E. 1122; Matter of Hutchison, 84 Hun, 563, 32 N. Y. Supp. 869; Matter of Ritch, 76 Hun, 36, 27 N. Y. Supp. 613. When this rule is applied to the conceded facts here involved, I am unable to see how the decree appealed from can be sustained. Upon the first trial Mr. Justice Clarke, referring to the evidence tending to show Thoma's interest in the fund, said:

"The evidence is weak, uncertain, and unreliable. I do not believe it. It seems to me that it was a bold attempt on George Thoma's part to get possession of Julia Huf's estate for his own purposes, by taking advantage of the power of attorney, and by concealing the fact of her death from the bank. The bank paid without taking ordinary precaution, and its defense is not made out." 41 Misc. Rep. 517, 85 N. Y. Supp. 16.

Mr. Justice O'Brien, who delivered the opinion of this court on appeal from the judgment entered upon the decision of Mr. Justice Clarke, after referring to the views expressed by him as to Thoma's testimony, said:

"With the conclusion thus reached by the learned trial justice we might agree, were it not for errors in the rulings excluding certain evidence offered by the defendant." 95 App. Div. 329, 88 N. Y. Supp. 686.

The judgment in favor of the administrator was reversed solely on the ground that the evidence thus referred to was not inadmissible under section 829 of the Code of Civil Procedure; Mr. Justice Patterson dissenting on the ground that the same was inadmissible. As the case then stood, two justices of this court had expressed opinions that the testimony sought to be introduced, showing that Thoma had an interest in the fund, could not, in view of the provisions of section 829, be received. On the second appeal the judgment in favor of the bank was unanimously reversed; five justices concurring in the statement, as appears from the opinion then delivered (109 App. Div. 24, 95 N. Y. Supp. 1045) that "Thoma is a highly interested witness, and the testimony given by him upon the trial was contradicted by affidavits which he had voluntarily made to the effect that he was a mere business agent of the deceased, and had no other interest in the moneys, except that he supposed, when he drew the money, that he had a right to do so," and that "the evidence is so unsatisfactory, and Thoma's testimony so contradictory and apparently unreliable, that justice requires there should be another trial."

After seven justices had thus expressed their views concerning the case, and five of them at least as to its merits, the administrator was

not only justified, but in my opinion it was his duty, to appeal from the judgment entered at the conclusion of the third trial, and as a matter of fact that the judgment was affirmed by a divided court and under such circumstances I do not see how it can be said that the appeal taken to the Court of Appeals was frivolous or without a reasonable hope of success, especially in view of the fact that two justices had theretofore decided against the admissibility of Thoma's testimony. The amount involved was nearly, or quite three-fourths of the assets of the estate. No question is raised but that the expenses which have been disallowed were necessarily incurred in connection with the appeals, and the referee found, and the evidence justifies the finding, that the same were just and reasonable. The conduct of the administrator in taking the last two appeals is to be tested by the rule of good faith, and not by mere success. Matter of Title Guarantee & Trust Co., 114 App. Div. 778, 100 N. Y. Supp. 243; affirmed 188 N. Y. 542, 80 N. E. 1121. I do not think it can be said the administrator acted in bad faith, or that he did not exercise reasonable care and prudence in thus prosecuting the appeals.

But it is said he did not act in good faith, because he had, prior to such appeals, recovered a judgment against Thoma for money drawn from the bank, which judgment would have prevented a recovery against the bank under the decision of Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479. A complete answer to this suggestion is that no such defense is pleaded by the bank, and it also seems that the action against the bank was commenced some time before the action was commenced against Thoma. If the administrator first commenced an action against the bank, this would seem to indicate that he had elected to hold it instead of Thoma, and under such circumstances the commencement of such action might have been a defense in the Thoma action; but it does not necessarily follow that because that action was first tried, and judgment rendered therein in favor of the plaintiff, Thoma being insolvent, the administrator thereby lost his right to continue the action against the bank. If the judgment against Thoma was a defense in the action against the bank under the circumstances of the case, then it is a little surprising that the bank did not set it up as a defense in a supplemental answer. It knew of the judgment, at least at the time of the second trial, and yet it took no steps towards urging it as a defense in the action against it. The administrator had not been able to collect anything on the Thoma judgment, the bank had not interposed that judgment as a defense, and therefore it seems to me he was bound to prosecute the action and collect the money from the bank for the benefit of the estate which he represented, if he could. He was not bound to discontinue the action simply because the bank had a doubtful defense, which it had never interposed.

It follows the decree, so far as appealed from, should be reversed, with costs against the respondent, and the matter remitted to the Surrogate's Court, with direction to enter a decree in conformity with the referee's report. All concur.